IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MR. KANZYYARKIA "KANZY" WILLIAMS, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NUMBER |
| vs. | ) | 26-cv |
| | ) | JURY DEMAND |
| | ) | |
| MONTOMGERY COUNTY BOARD OF EDUCATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

Comes now Plaintiff, Kanzyyarkia "Kanzy" Williams, by and through his attorneys of record, and for his Complaint against Defendant, Montgomery County Board of Education, states the following:

## PRELIMINARY STATEMENT

1.     Plaintiff, a current employee of Defendant, seeks declaratory and injunctive relief, compensatory damages, backpay, frontpay and/or instatement, and all legally available relief from Defendant arising from Defendant's violations of the rights guaranteed to Plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended by the Civil Rights Act of 1991 (hereinafter "Title VII").  Specifically, Plaintiff alleges that the Defendant discriminated against

1

him based upon his sex, male, and retaliated against him in the terms and conditions of him employment in violation of Title VII after he engaged in protected activity, i.e., filed an EEOC Charge.  Plaintiff seeks compensatory damages and requests a jury trial pursuant to 42 U.S.C. §1981a.

## JURISDICTION AND VENUE

2.    Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §20000e, *et seq.*, as amended by the Civil Rights Act of 1991.

3.    Subject matter jurisdiction of this Court is invoked pursuant 28 U.S.C. §1331, as the case arises under federal law and pursuant 42 U.S.C. §2000e, *et seq.*, 28 U.S.C. §1343 and 42 U.S.C. §1981a.

4.    This action is brought within the State where the unlawful employment practice was committed, making venue proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §1391(b); the actions complained of occurred in this District, and all parties reside in this District.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§2201 and 2202 (declaratory judgments), and Fed. R. Civ. P. Rule 57.

6.    Plaintiff has fulfilled all conditions precedent to the institution of this action under 28 U.S.C. §§1331 and 1343(4), and the Act of Congress known as Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiff timely filed his charges of sex and retaliation discrimination with the Equal

2

Employment Opportunity Commission (hereinafter "EEOC") within 180 days of occurrence of the last discriminatory acts.

## PARTIES

7.      Plaintiff, Kanzyyarkia "Kanzy" Williams (hereinafter "Plaintiff" or "Williams"), is an African-American male citizen of the United States of American and a resident of the State of Alabama and of this Judicial District and Division.  At all times relevant to this action, Plaintiff has been employed by Defendant in Montgomery, Alabama location.

8.      Defendant Montgomery County Board of Education (hereinafter "Defendant" or "Montgomery BOE") is an employer within the meaning and coverage of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended. Upon information and belief, Defendant employs over 100 employees all times relevant to this lawsuit and continues to employ over 100 employees.

9.      Defendant is a public school system doing business within this District and Division.

10.    At all relevant times, Plaintiff has been an employee of Defendant within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended.

## FACTS

11.     Plaintiff was hired by Defendant in October 2010, as a Teacher.  In or about September 2025, Plaintiff was informed that beginning in November 2025, he would be moved to the position of 12-month Contract Teacher assigned to a Specialized Treatment Center ("STC"), Mac Sim Butler Detention Facility ("Mac Sim"), in a position teaching students being housed at the county jail.  At all times relevant to this lawsuit, Plaintiff has performed his duties and responsibilities as a Contract Teacher in a satisfactory manner.

12.     In his teaching position at Mac Sim, Plaintiff was also assigned additional duties to perform, which were the duties of a STC Education Coordinator. This assignment of additional duties occurred on or around late 2025 early 2026.  In fact, Defendant and others referred to Plaintiff's job title as being STC Specialist.

13.     In early 2026, the STC Education Coordinator job position became available, and the position was originally posted from January 23 through February 18, 2026.

14.     Plaintiff was qualified for the position of STC Education Coordinator and he had been performing some of the same duties of this position.  Plaintiff applied for said STC Education Coordinator position within the established timeline, and he participated in the interview process.

15.     The interview process was conducted by a four-person committee that

included the two employees that were in the direct chain of command above the STC Education Coordinator position. The committee interviewed four candidates, including Plaintiff and Jennifer Adams (female).

16.    On February 13, 2026, the hiring official informed Plaintiff that he was the candidate selected for the STC Education Coordinator position.

17.    On February 19, 2026, Plaintiff was directed to complete the onboarding, including the "Transfer Employees" process and associated onboarding documentation, for the STC Education Coordinator position.  That same day, as part of the onboarding process, HR (Dr. Ozella Ford) reviewed Plaintiff's ADA self-identification paperwork, which reflected that he has photophobia and thus must wear tinted eyeglasses.

18.    On Friday, February 20, 2026, the STC Education Coordinator position was reposted, which was one day after Dr. Ford reviewed Plaintiff's ADA paperwork and had him go through the onboarding process.  At this time, Plaintiff was told he would have to interview again without any written clarification as for why, any rescission of the prior selection, any notification of a change in status, and/or any reasons for not following Defendant's hiring policies or procedures.

19.    On Tuesday February 24, 2026, a second interview was conducted with only two candidates – Plaintiff and Jennifer Adams, by the newly hired Chief of Staff, Dr. Barbara Lashey, and the Associate Superintedent of HR, Dr. Ozella Ford,

5

rather than the original hiring committee or any of its members.

20.    On Wednesday February 25, 2026, Dr. Barbara Lashey informed Plaintiff that he was no longer selected for the STC Education Coordinator position that he was originally awarded.  Dr. Lashey informed Plaintiff that Ms. Adams (female) was chosen instead.

21.    Plaintiff was not given any reason for Defendant's decision to repost and select a different applicant for the position for which he was originally awarded.

22.    Upon information and belief, the female selected for the STC Education Coordinator position did not meet the posted qualifications for the position.

23.    Based upon the job posting and his qualifications, Plaintiff was more qualified for the position of STC Education Coordinator than the female awarded the position.  In addition, prior to being replaced in the STC Education Coordinator position by the less qualified female, Plaintiff had been performing substantial STC Education Coordinator duties and responsibilities, including but not limited to:

- Conducting site visits and compliance monitoring;
- Coordinating student scheduling and testing;
- Executing and facilitating the required Memorandum of Agreement (MOA) for State STC endorsement.

During this time period, district leadership for Defendant relied upon Plaintiff to execute the required agreements and to perform said duties and responsibilities of the STC Education Coordinator position, while he was also performing his teaching duties.  These additional duties provided Plaintiff with more job experience than the

6

female selected for the position.

24.    On March 1-2, 2026, Plaintiff filed a formal grievance with the Superintendent, Dr. Zickeyous Byrd, regarding the hiring process and the actions described above.

25.    On March 6, 2026, Dr. Byrd acknowledged Plaintiff's grievance and referred it to the HR department.

26.    On March 7, 2026, Plaintiff filled out an intake information document with the Equal Employment Opportunity Commission ("EEOC") to file a Charge of Discrimination regarding the denial of the STC Education Coordinator job position and the awarding of it to a less qualified female.  Plaintiff filled out this intake document without the assistance of counsel.

27.    On March 18, 2026, Plaintiff received an acknowledgement from the EEOC of his complaints (Charge No. 420-2026-02471), which Plaintiff believed was the formal Charge of Discrimination. On or about this same date, Plaintiff also informed his Supervisor that he had filed a complaint of discrimination with the EEOC regarding not receiving the STC Education Coordinator's position.

28.    On April 15, 2026, during a meeting, Plaintiff was verbally questioned for referring to himself as "STC Specialist," which was his official title on the Montgomery Public Schools website at the time and was so until recently.

7

29.    On April 16, 2026, Plaintiff had a meeting with Dr. Catherliene Williamson, Associate Superintendent, wherein she advised Plaintiff that she had been instructed to issue him a written reprimand for allegedly referring to himself using the wrong job title.  Plaintiff questioned this write-up because STC Specialist was how Defendant had been referring to him, both on its website and in Board documents and contracts.  Plaintiff also questioned Dr. Williamson whether the write-up was retaliation because he had filed a complaint with the EEOC.  Plaintiff asked Dr. Williamson whether the write-up was going into his personnel file with HR.  Dr. Williamson left the room and spoke with another employee, and then she returned and said, "it would just be kept in house".  Plaintiff signed this write-up acknowledging that he received it but stating that he did not agree with the allegations in the same.  This write-up came while Plaintiff's internal grievance was still pending and his EEOC Charge was still pending.  Defendant was aware of both the internal grievance and his EEOC Charge.

30.    On April 23, 2026, Dr. Ozella D. Ford, MPS HR Director, formally denied Plaintiff's internal grievance, and asserted the hiring process complied with policy.

31.    Dr. Ford had reviewed Plaintiff's ADA paperwork on February 19th, after which the position was reposted within 24 hours and was then awarded to a less qualified female applicant. Dr. Ford also subsequently participated in multiple stages

of the process, including sitting on Plaintiff's second interview panel. Despite her involvement in the process, Dr. Ford was the one who signed the grievance denial.

32.     On April 28, 2026, the EEOC issued a Notice of Right to Sue on Plaintiff's original Charge of Discrimination and Retaliation.

33.     On May 28, 2026, Plaintiff received another written reprimand concerning a data recording error surrounding graduation data reporting for Pearl Academy students that were enrolled in his classes. These students were enrolled in his classes when Plaintiff arrived at the STC, Mac Sim. The figure in question was corrected before the final data was submitted to the State Department of Education ("ALSDE") and was never reported to ALSDE. Captain Dill had already acknowledged the original data mistake at the facility level. Plaintiff was required to prepare and submit a formal written rebuttal, which took substantial time outside of my normal job duties. This write-up and rebuttal have resulted in a disciplinary document in Plaintiff's personnel file over a matter that had already been corrected prior to any submission to ALSDE.

34.     Neither Letter of Concern that Plaintiff received involved student harm, insubordination, dishonesty, or professional misconduct. Both writ-ups arose from administrative matters that were either accurate as stated or corrected before final submission. To Plaintiff's knowledge, no other employees have been subjected to comparable disciplinary actions for using an accurate job title or for correcting

9

administrative data before final submission.

35.     During his sixteen years of employment with Defendant, Plaintiff had never received a formal disciplinary action of the kind he received with the two write-ups.   Within approximately six weeks of filing his internal grievance and EEOC Charge, Plaintiff has received two (2) Letters of Concern (write-ups).   To Plaintiff's knowledge, female employees and employees who have not opposed discrimination have not been reprimanded for correcting data before the final submission of the data to ALSDE.

36.     Since filing his internal grievance and original EEOC Charge, Plaintiff has been subjected to on-going and continuous gender discrimination and retaliation. This ongoing and continuing gender discrimination and retaliation includes, but not limited to, being excluded from: (a) State Department communications regarding Mac Sim and the STC program; (b) Program-level decisions affecting his role and site; (c) Leadership discussions and communications generally available to Ms. Adams and administration; (d) Changes affecting Mac Sim's operations, which he frequently learns about only after the fact; and (e) receiving adequate supervision from his direct Supervisor. This retaliatory and discriminatory conduct towards Plaintiff is on-going and of a continuous nature and continues up to the date of filing of this Complaint.

37.     Because of his protected activity, Plaintiff has been retaliatorily issued

disciplinary actions by Respondent as set out above and treated differently in the terms and conditions of his employment than others who have not filed grievances and/or EEOC charges.  Plaintiff has also been treated differently in the terms and conditions of his employment than female employees.

38.     During the last year of his employment with Respondent, Plaintiff has been discriminated against and treated differently in the terms and conditions of his employment because of his gender, male.  Plaintiff has also been retaliated against for protesting gender discrimination.  All the above-described conduct by Defendant was in violation of Title VII, as amended, and is ongoing.

39.     Plaintiff is being subjected to on-going retaliation in the terms and conditions of his employment and being held to a different standard due to his complaints of discrimination.

40.     On July 23, 2026, Plaintiff filed a new Charge of gender discrimination and retaliation against Defendant for the on-going discrimination and retaliation. While the retaliation is on-going and of a continuous nature and grows out of the filing of his original Charge of Discrimination, Plaintiff is not required to file his new Charge to exhaust his administrative remedies but did so out of an abundance of caution.  *See Gupta v. East Texas State University,* 654 F.2d 411, 414 (5th Cir. 1981)("it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has

11

ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."). Plaintiff will ask the EEOC for an expedited Notice of Right to Sue on this Charge and will move to amend this complaint to submit said Notice when he receives the same.

41.    Throughout Plaintiff's last year of employment with Defendant, he has been discriminated against and treated differently in the terms and conditions of his employment because of his gender, male. Plaintiff was also retaliated against for protesting gender discrimination. All the above-described conduct by Defendant was in violation of Title VII, as amended.

42.    On information and belief, Plaintiff believes he was not ultimately awarded the position of STC Education Coordinator due to his sex, male, and in retaliation for complaining about gender discrimination.

43.    In its actions toward Plaintiff as described above, Defendant acted willfully, intentionally and with callous and reckless indifference to Plaintiff's federally protected rights under Title VII.

44.    Defendant's denial of the STC Education Coordinator position to Plaintiff and retaliation against Plaintiff caused him to suffer loss of income, loss of job benefits, economic losses, damaged his professional reputation and career, and severe humiliation, mental distress and emotional suffering.

## **COUNT ONE**

### **Claim for Discrimination in Violation of Title VII**
### **(Denial of STC Coordinator Position)**

45.    Plaintiff re-alleges, adopts, and incorporates the forgoing paragraphs 1 through 44 as though recopied and restated herein in full.

46.    As set out in detail above, Defendant intentionally, maliciously, and unlawfully discriminated against Plaintiff on the basis of sex in violation of Title VII by denying Plaintiff the STC Education Coordinator position he was originally awarded on the basis of sex, and by subjecting him to disparate treatment in the terms and conditions of his employment. Defendant intentionally violated Plaintiff's rights pursuant to Title VII.

47.    All acts of discrimination were done intentionally, willfully with malicious and/or reckless disregard for the rights of Plaintiff.

48.    In taking the above-described actions, Defendant intentionally, unlawfully discriminated against Plaintiff on the basis of his sex in violation of Title VII. The actions of Defendant were taken intentionally, with malice or reckless indifference to the federally protected rights of Plaintiff.

49.    As a proximate consequence of Defendant's actions and the violations of Title VII, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, emotional pain, inconvenience, humiliation, damage to his professional life and future career opportunities, loss of

enjoyment, loss of reputation, and other injuries and compensatory damages.

50.     Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's conduct as set forth herein unless enjoined by this Court.

51.     Plaintiff has no adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory damages is his only means of securing adequate relief.

52.     As set out in detail above, the Defendant knew, or should have known, of the sex discrimination and condoned, ratified and otherwise allowed the sex discriminatory behavior to continue.

53.     Plaintiff suffered damages as a proximate result of these violations, which were caused by Defendant's policy, practice, or custom to allow and condone sex discrimination in deliberate indifference to rights of Plaintiff.

54.     Plaintiff has satisfied all administrative prerequisites to bringing this claim:

A.      Plaintiff timely filed his charge of said discrimination with the Equal Employment Opportunity Commission against Defendant and executed it on April 27, 2026, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.  (*See* attached Exhibit "A").

B.      On April 28, 2026, the EEOC issued its Determination and Notice of Rights (*See* attached Exhibit "B").

C.    This complaint has been filed within 90 days of Plaintiff's receipt of the notification of the Determination and Notice of Rights dated April 28, 2026.

D.    Plaintiff also timely filed his second charge of gender discrimination and retaliation with the Equal Opportunity Commission against Defendant on July 23, 2026, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.  (*See* attached Exhibit "C").

E.    Plaintiff will ask for an expedited Determination and Notice of Rights on this second charge and will move to amend and submit it as Exhibit "D" upon receipt of the same.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A.    Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto;

B.    Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and/or retaliatory employment practices;

C.    Grant Plaintiff full reinstatement to the STC Education Coordinator position which was discriminatorily denied;

D.    Grant Plaintiff the appropriate amounts of backpay, interest, benefits,

15

damages, backpay in the amount he would have earned but for the but for the unlawful retaliatory and/or discriminatory practices of Defendant, and instatement to the job position from which he was discriminatorily denied, or in the alternative, frontpay;

E.    Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress, emotional pain, inconvenience, humiliation, damage to his professional life and future career opportunities, loss of enjoyment, loss of reputation, and other injuries and compensatory damages;

F.    Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

G.    Award such other relief as may be appropriate.

## COUNT TWO
### Claim for Retaliation in Violation of Title VII
### (Disciplinary Actions Since Filing His Charge of Discrimination)

55.    Plaintiff re-alleges, adopts, and incorporates the forgoing paragraphs 1 through 44 as though recopied and restated herein in full.

56.    As set out in detail above, Plaintiff was fully qualified for and met the requirements to be awarded the STC Education Coordinator position.

57.    Since being denied the STC Education Coordinator position and filing internal complaints and an EEOC charge regarding same, Plaintiff has been given

16

disciplinary actions, which are clearly in retaliation for his engaging in protected activity, and has been retaliated against in the terms and conditions of his employment. This retaliation is on-going and of a continuous nature.

58.    Plaintiff complained about the discrimination and retaliation against him and Defendant failed to take corrective actions to prevent the discrimination and retaliation. Defendant's actions are in violation of Title VII.

59.    As set out in detail above and in taking the above-described actions, Defendant has intentionally retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended, for Plaintiff engaging in protected activity and/or protected speech under Title VII, exercising his federally protected rights under Title VII to oppose unlawful gender discrimination under Title VII or what he in good faith and reasonably believed was unlawful gender discrimination under Title VII, and/or exercising her federally protected rights under Title VII to oppose unlawful employment practices under Title VII or was he in good faith believed to be unlawful employment practices under Title VII. Employees who have not opposed such discrimination have not been treated in a similar manner as Plaintiff. The actions of Defendant were taken intentionally or with malice or reckless indifference to the federally protected rights of Plaintiff.

60.    Defendant's actions were in violation of Title VII.

61.     As a proximate consequence of Defendant's actions and the violations of Title VII, Plaintiff has suffered, and will continue to suffer, lost income and benefits, mental anguish and emotional distress, emotional pain, inconvenience, humiliation, damage to his professional life and future career opportunities, loss of enjoyment, loss of reputation, and other injuries and compensatory damages.

62.     The retaliation against Plaintiff is ongoing and of a continuous nature.

63.     Plaintiff has satisfied all administrative prerequisites to bringing this claim:

A.     Plaintiff timely filed his charge of said discrimination with the Equal Employment Opportunity Commission against Defendant on April 27, 2026, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.  (*See* attached Exhibit "A").

B.     On April 28, 2026, the EEOC issued its Determination and Notice of Rights (*See* attached Exhibit "B").

C.     This complaint has been filed within 90 days of Plaintiff's receipt of the notification of the Determination and Notice of Rights.

D.     Plaintiff also timely filed his second charge of gender discrimination and retaliation with the Equal Opportunity Commission against Defendant on July 23, 2026, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.  (*See* attached Exhibit "C").

E.      Plaintiff will ask for an expedited Determination and Notice of Rights on this second charge and will move to amend and submit it as Exhibit "D" upon receipt of the same.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A.      Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto;

B.      Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and/or retaliatory employment practices;

C.      Grant Plaintiff instatement to the STC Education Coordinator position or any position discriminatory and retaliatorily denied by Defendant, with full benefits, from which he was retaliatory and/or discriminatorily denied;

D.      Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, backpay in the amount he would have earned but for the unlawful discriminatory and/or retaliatory practices of Defendant, and instatement to the job position from which he was discriminatorily and/or retaliatorily denied, or in the alternative, frontpay;

E.      Grant Plaintiff an award of compensatory damages, including but not

19

limited to an award for mental anguish and emotional distress, emotional pain, inconvenience, humiliation, damage to his professional life and future career opportunities, loss of enjoyment, loss of reputation, and other injuries and compensatory damages;

F.     Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

G.     Award such other relief as may be appropriate.

Plaintiff Demands a Jury Trial on All Claims Triable to a Jury.

**RESPECTFULLY SUBMITTED** this the 24th day of July, 2026.


/s/  *Candis A. McGowan*
**CANDIS A. MCGOWAN**
**LACEY K. DANLEY**
Counsel for Plaintiff
Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
205/314-0500
cmcgowan@wigginschilds.com
ldanley@wigginschilds.com



**DEFENDANT'S ADDRESS**
To Be Served by Certified Mail

Montgomery County Board of Education
632 S. Union Street
Montgomery, Alabama 36106